IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ISRAEL REYNA,

        Petitioner,

    v.                                   No. 10-3254-SAC

RAY ROBERTS, et al.,

        Respondents.

**MEMORANDUM AND ORDER**

This matter comes before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate at the El Dorado Correctional Facility, proceeds pro se, so the court liberally construes his pleadings. *See Federal Exp. Corp. v. Holowecki,* 552 U.S. 389, 402 (2008).

Petitioner raises the following claims: 1) his convictions were obtained unconstitutionally due to the State's failure to charge and the trial court's failure to instruct on an element of the crimes alleged; 2) the court erred in admitting expert witness testimony; 3) his right to a fair trial was violated by limitation of his counsel's voir dire of potential jurors; 4) insufficient evidence was presented at trial to support his convictions.

**Procedural background**

Petitioner was convicted by a jury of four counts of Aggravated Indecent Liberties with a Child, in violation of K.S.A. 21-3504(a)(3)(A), in July of 2007, and was sentenced to a term of life imprisonment with no

possibility of parole for 25 years.  Petitioner appealed and his convictions

and sentences were affirmed by the Kansas Supreme Court. *State v. Reyna*,

290 Kan. 666, *cert. denied*, 131 S.Ct. 532 (2010). On appeal, Petitioner

raised the following claims: the State failed to charge an essential element

of the crime; the trial court erred by allowing certain expert testimony and

limiting defense counsel's voir dire; insufficient evidence supported his

convictions; the mandatory minimum sentence of K.S.A. 21-4643 was

unconstitutional; and, the district court erred in denying his motion for a

downward departure sentence. After the United States Supreme Court

denied certiorari, Petitioner timely filed this petition for federal habeas

corpus relief pursuant to 28 U.S.C. § 2254. Petitioner has thus exhausted his

available state court remedies as to each of the claims raised in this petition.

**Underlying facts**

This court must presume that the state court's factual findings are

correct, absent clear and convincing evidence to the contrary. 28 U.S.C. §

2254(e)(1); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004), *cert.*

*denied*, 545 U.S. 1146 (2005). Petitioner has not rebutted by clear and

convincing evidence the factual findings which the Kansas Supreme Court

set forth in its opinion. Accordingly, the Court incorporates its factual

statement, which follows:

> In December 2006, Reyna lived in Salina with his ex-wife, Kelly.
> The two had divorced but later reconciled. Kelly operated a daycare
> center out of their home. One of the children that she routinely cared

2

for was the 6–year–old daughter, B.B., of her brother, Scott B. B.B. had two brothers. Scott had been seeing a woman named Amber E., who had two children: a girl, 7–year–old A.E., and a boy.

December 22, 2006, was Scott's 30th birthday and Amber had planned a surprise party for him … Kelly … agreed that Scott's and Amber's children could stay at her house. Amber dropped the children off around 5:30 p.m.

Kelly left for the party around 8 p.m. Reyna decided not to go because most of Kelly's family would be there and his relations with them were strained. Kelly indicated that she did not intend to stay long. Kelly and Reyna's sons, Matt, age 13, and Aaron, age 11, were left in charge of the younger children, with Reyna present as the responsible adult.

While Kelly was gone, Reyna sat in their upstairs bedroom listening to music, watching television, and drinking whiskey and Coke. Aaron mostly stayed in his room, also upstairs near his parents' bedroom. Matt mostly stayed downstairs. The smaller children, A.E., B.B., and the three boys, apparently ran wild throughout the house, wrestling, getting into Kelly's makeup, making tents in the upstairs hallway, watching television, and playing video games with Aaron. A.E. and B.B. also spent some time in Reyna and Kelly's bedroom with Reyna. While Kelly was gone, a friend of hers called and talked to Reyna on the phone for 30 to 45 minutes.

As Kelly was leaving the party, Amber asked her if the children could spend the night at Kelly's so that Amber could continue partying with Scott and friends. Kelly agreed to keep the children. A.E. and B.B. were excited to learn that they would spend the night and slept on the living room couch together.

A.E. returned to school following the holiday break on January 4th. She attended an after-school care program. That afternoon, the supervisor of the program called Amber to come to the school. A.E. had told one of the program adults that Reyna had engaged in inappropriate sexual conduct with her and B.B. Amber called Scott. Scott and Kelly later brought B.B. from Kelly's house to the house where Amber and Scott were living. On the way, Scott asked B.B. if there was anything she needed to tell him. After first confessing that she got in trouble for hitting someone in daycare, she then said that Reyna had touched her "privates."

Reyna was charged with one count of rape or, in the alternative, aggravated indecent liberties with each child. He was also charged with a second count of aggravated indecent liberties with each child. The complaint set out his year of birth, and he testified at trial that he was 37 years of age; however, the complaint did not allege as part of

the charges of aggravated indecent liberties with a child that he was over the age of 18 at the time of the offenses, nor was the jury instructed to determine his age.

The State questioned the prospective jurors during voir dire for over an hour. Shortly into the defendant's voir dire, the trial judge called counsel to the bench and a discussion was had off the record. Defense counsel resumed questioning of the prospective jurors but later put on the record that she had felt limited by an admonition from the judge during the off-the-record discussion.

During trial, the State presented the testimony of a child sexual abuse therapist, Joni Alberts–Plumer. Prior to trial, the defense objected to the therapist testifying about her counseling of the victims, reasoning that any testimony that she had counseled them necessarily implied a finding that they had been sexually abused. The court agreed and limited the therapist's testimony to general statements concerning the behavior of child sexual abuse victims. The defense registered a continuing objection to her testimony at trial.

Both A.E. and B.B. testified at trial. Although their testimony was a bit sketchy, as might be expected from a 7–and 6–year old, respectively, they both testified that Reyna had touched their vaginal areas and made them touch his genitals.

The jury returned guilty verdicts on two counts of aggravated indecent liberties against A.E. and on both the rape count and the alternative count of aggravated indecent liberties against B.B., in addition to the stand alone count of aggravated indecent liberties against B.B. The trial court later dismissed the rape conviction.

The defense filed a posttrial motion for a new trial and a motion for sentencing under the Kansas Sentencing Guidelines Act (KSGA), alleging that the failure to plead and prove Reyna's age, an element of the off-grid offense, required sentencing him under the KSGA rather than treating the convictions as off-grid felonies under K.S.A. 2006 Supp. 21–4643. He also filed a motion for dispositional and durational departure from the sentence set out in K.S.A. 2006 Supp. 21–4643(d). The trial court denied the motions and sentenced Reyna to a controlling sentence of life with a hard 25 years. He timely appealed.

*Reyna*, 290 Kan. at 669-671.

## Standards for 2254 motions

Federal habeas corpus relief is available under § 2254 only upon a

showing that petitioner is in custody in violation of the constitution or laws of

the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). This court cannot correct errors of state law, and is bound by the state court's interpretation of its own law. *Id.*

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern and circumscribe a federal court's review of petitioner's claims. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Under § 2254, as amended by AEDPA, the Court may not grant federal habeas corpus relief unless the applicant establishes the state court's adjudication of the claims resulted in a decision that was either (1) "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). *See Bobby v. Mitts*, __ U.S.__,  131 S.Ct. 1762, 1763 (2011).

> A state-court decision is contrary to the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in Supreme Court cases, or if the decision confronts a factual scenario that is materially indistinguishable from a Supreme Court case but reaches a different result…. A state-court decision involves an unreasonable application of the Supreme Court's clearly established precedents if the decision applies Supreme Court precedent to the facts in an objectively unreasonable manner.

*Sperry v. McKune*, 445 F.3d 1268, 1271 (10th Cir.), *cert. denied*, 549 U.S. 1039 (2006), citing *Brown v. Payton*, 544 U.S. 133, 141 (2005). "A legal principle is 'clearly established' … only when it is embodied in a holding of [

the Supreme Court]" as the governing legal principle when the state court renders its decision. *Thaler v. Haynes*, __ U.S. __, 130 S.Ct. 1171, 1173 (2010); *Lockyer*, 538 U.S. at 71-72. The application of clearly established Supreme Court law must be unreasonable, not just incorrect. *Renico v. Lett*, __ U.S.__, 130 S.Ct. 1855, 1858 (2010).

**Discussion**

**Omission of element of crimes charged**

Petitioner first contends that his convictions were obtained in violation of the Sixth and Fourteenth Amendments to the United States Constitution because the State failed to charge and the trial court failed to instruct on an element of the crimes alleged, *i.e.*, his age.

Petitioner is correct that under the facts of this case, his age was an element of the crimes charged. Petitioner was charged and sentenced under K.S.A. 21-3504(a)(3)(A) and K.S.A. 21-4643, which subjected him to a life sentence with no possibility of parole for 25 years. The Kansas Supreme Court has ruled that because the enhanced sentence of K.S.A. 21-4643 (life without possibility of parole for 25 years) is applicable only to defendants who are at least 18 years old, a defendant's age is an element of the crime that must be proven to a jury beyond a reasonable doubt, in accordance with the United States Supreme Court's holding in *Apprendi v. New Jersey*,

530 U.S. 466 (2000).[1] *See e.g., State v. Bello*, 289 Kan. 191, 195-200 (2009); *State v. Gonzales*, 289 Kan. 351, 371-72 (2009). Additionally, it is uncontested that the State failed to charge Petitioner's age as an element of the crimes, and that the trial court failed to instruct the jury on that element.

When Petitioner raised this issue on his direct appeal, the Kansas Supreme Court agreed that failure to charge and instruct on the element of his age was error, but found that a harmless error analysis applied. The Court found that the complaint adequately charged Petitioner with the off-grid offenses, although it failed to include the off-grid element of age in the individual counts charging the crimes. It agreed that the instructions were erroneous in omitting the defendant's age at the time of the offenses, and that the sentencing was an *Apprendi*-type error to the extent it relied on judicial factfinding of the omitted element of age, because that element enhanced the maximum applicable sentence. The Court found those errors to be harmless, however, because the fact of Petitioner's age was uncontroverted.  The crimes were alleged to have occurred the year prior to trial, and Petitioner testified at trial, in response to a question by his own

---

[1]*Apprendi* held that any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and established beyond a reasonable doubt.

counsel,[2] that he was 37 years old at the time of trial. No contradictory evidence was offered on that issue. *Reyna*, 290 Kan. at 679-82. Accordingly, the Court found that the conviction and sentence would have been the same, absent the error.

In reaching that ruling, the Court looked to *State v. Daniels*, 278 Kan. 53, 57, *cert. denied,* 543 U.S. 982 (2004), which adopted the pre-*Apprendi* test of *Neder v. United States*, 527 U.S. 1 (1999), and to the post-*Apprendi* case of *Washington v. Recuenco*, 548 U.S. 212 (2006). The Kansas Supreme Court's summarization of those rulings, which found that a Sixth Amendment violation in this context is not structural error, is accurate:

> Thus, *Daniels* stands for the proposition that this court will apply the harmless error analysis to the omission of an element from the instructions to the jury when a review of the evidence leads to the conclusion beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error. And *Recuenco* stands for the proposition that characterizing the omission as an *Apprendi*-type error, *i.e.*, judicial factfinding of the omitted element when that element enhances the maximum applicable sentence, does not change that analysis.

*Reyna*, 290 Kan. at 772. The Kansas Supreme Court properly found the harmless error analysis to be applicable.

The Court then found the omission of the element from the jury

---

[2]Petitioner appears to erroneously believe that because the State has the burden to prove each element of the crimes, only testimony from the State's witnesses can be used to meet that burden. The law is not so restrictive.

instructions to be harmless error because the record contained no evidence that could rationally have lead the jury to a contrary finding with respect to defendant's age at the time of the crime. Because the only evidence on the issue was Petitioner's credible testimony that he was 37 at the time of trial in July of 2007, he was indisputably over the age of 18 at the time of the crimes in December of 2006. For the same reasons, the Court found harmless the *Apprendi*-type error that occurred when the trial court, rather than the jury, made the age determination and imposed sentence on Reyna under K.S.A. 2006 Supp. 21–4643. *Id.*, at 682. The Kansas Supreme Court's application of the harmless error standard was thus reasonable.

The complaint satisfied due process by advising Petitioner of the precise nature of the charge and of the date, time and place when the offenses were alleged to have been committed. The Kansas Supreme Court's decision on the issue of the omission of Petitioner's age from the jury instructions was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court. Instead, it was an accurate and reasonable application of *Neder* and *Recuenco*.

> Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 9, 119 S.Ct. 1827. Therefore, in general, "the omission of an element [from a jury instruction] is subject to harmless-error analysis." *Id.* at 10, 119 S.Ct. 1827.

*United States v. Dago*, 441 F.3d 1238, 1244 -1245 (10th Cir. 2006). *See Scoggin v. Kaiser*, 186 F.3d 1203, 1207 (10th Cir.), *cert. denied*, 528 U.S. 953 (1999) (recognizing that misstatements or omissions of an element in jury instructions are subject to harmless error analysis on habeas review).

Petitioner, in his traverse, contends that failure to instruct on an element is structural error, citing the Tenth Circuit case of *United States v. Miller*, 111 F.3d 747 (1997). *Miller*, however, did not examine omission of an essential substantive element of a crime, but examined the failure to instruct on venue. It held that the failure to instruct on venue, when requested, is reversible error unless it is beyond a reasonable doubt that the jury's guilty verdict on the charged offense necessarily incorporates a finding of proper venue. That issue is not before this Court, but even if it were, *Miller* applied the harmless error analysis used for trial error, not the *per se* analysis used for structural error. *Miller* does cite to *United States v. Wiles*, 102 F.3d 1043 (10th Cir. 1996), which held that the district court's failure to instruct on an essential element of a crime was structural error. But *Wiles* is no longer good law on this issue because the Supreme Court subsequently held in *Neder* that the failure to instruct the jury on an element of the offense does not constitute structural error, which is reversible *per se*, but is instead subject to harmless error review. *See United States v. Schleibaum*, 522 U.S. 945 (Nov 03, 1997) (granting certiorari, vacating judgment in *Wiles)*; *United States v. Schleibaum*, 130 F.3d 947 (10th Cir. Dec 10, 1997) (decision on

remand). *See also United States v. Acosta-Gallardo*, 2011 WL 3805764, 14, n. 3 (10th Cir. 2011) (so stating).

The same is true for the court's conclusion that the *Apprendi*-type error that occurred in sentencing was subject to harmless error analysis, and was in fact harmless. *See Recuenco*, 548 U.S. at 222 ("[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error.") Thus, Petitioner must show that the asserted error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Here, no "actual prejudice" has been shown. *Id*. at 637 (internal citations and quotations omitted). Based on the uncontested evidence, there is no reasonable possibility that the jury would have found that Petitioner was under the age of 18 at the time of the crimes. Consequently, Petitioner has not stated a Fourteenth Amendment claim or shown any basis for federal habeas relief.

**Expert testimony**

Petitioner next complains about the trial court's admission of the expert witness testimony of a child therapist. The expert did not testify that she had examined the victims or that they had symptoms consistent with sexual abuse, but testified only about generalizations concerning typical behaviors of sexual abuse victims, including their delay in reporting the offenses.

The petition states: "The court erred in allowing a therapist to provide

testimony in violation of K.S.A. 60-456(b)." Doc. 1, p. 3. This claim, and Petitioner's description of it elsewhere in his habeas petition, alleges only a violation of a state rule of evidence, not of the federal constitution. Similarly, the Kansas Supreme Court examined only whether the trial court abused its discretion in admitting the testimony, not whether admission of the testimony violated due process of any other federal law. If Petitioner wishes to raise a federal constitutional claim, it is incumbent upon him to do so. *See Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."). "Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)), *cert. denied*, 531 U.S. 833 (2000). Nothing in the petition, read liberally in Petitioner's favor, raises a federal constitutional claim regarding this issue. Therefore, the petition does not raise a claim upon which federal habeas relief can be granted.

But even if the constitutional issue had been raised in the habeas petition, Petitioner has shown no basis for habeas relief. Federal habeas corpus relief is proper only if the evidentiary ruling rendered the trial so fundamentally unfair as to constitute a denial of due process. "When the

12

admission of evidence in a state trial is challenged on federal habeas, the question is whether the error, if any, was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Williamson v. Ward*, 110 F.3d 1508, 1522–23 (10th Cir. 1997) (pre-AEDPA). *See Lopez v. Trani*, 628 F.3d 1228 (10th Cir. 2010); *Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir.), *cert. denied*, 534 U.S. 1068 (2001). The standard required to make this showing is very high, as the Tenth Circuit has found:

> To demonstrate that the Kansas Court … violated a clearly established federal law [Petitioner] must meet an extraordinarily high standard; he must demonstrate that the putative error was a "failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial." *Parker v. Scott*, 394 F.3d 1302, 1310 (10th Cir. 2005) (quoting *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 (1941)).

*Pouncil v. Nelson*, 123 Fed.Appx. 348, 352, 2005 WL 375939, 3 (10th Cir. 2005).

Further, "because a fundamental fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted). In conducting its fundamental fairness analysis, the habeas court is not to "second guess a state court's application or interpretation of state law … unless such application or interpretation violates federal law."

13

*Bowser v. Boggs*, 20 F.3d 1060, 1065 (10th Cir.), *cert. denied*, 513 U.S. 926 (1994).

Petitioner contends that the expert testimony was inadmissible under the Kansas statute. K.S.A. 60-456(b) limits expert opinion testimony to "such opinions as the judge finds are … (2) within the scope of the special knowledge, skill, experience or training possessed by the witness." Petitioner contends the expert testimony was not based on necessity and was within the common knowledge of the jury.

Kansas' evidentiary rule on admissible expert testimony corresponds with the federal rule. The federal rule expressly allows experts to testify if the trial court finds their testimony will assist the trier of fact in understanding the evidence or determining a fact in issues. Fed.R.Evid. 702. The Kansas rule does not expressly state the same premise, but case law interpreting the statute establishes that same basis for admission. Although Petitioner is correct that some Kansas authority states that the basis for admission of expert testimony is "necessity," *see e.g.*, *State v. Cooperwood*, 282 Kan. 572 (2006), the Kansas Supreme Court interprets "necessity" to mean "helpfulness," as its recent statement clarifies:

> Necessity under the particular circumstances of the case, *e.g.*, helpfulness to the jury, is the basis for the admissibility of expert witness testimony." *Cooperwood*, 282 Kan. 572, Syl. ¶ 5, 147 P.3d 125. Consequently, " ' " '[if] the normal experience and qualifications of jurors permit them to draw proper conclusions from [the] given facts and circumstances, expert conclusions or opinions are not necessary.' " ' [Citations omitted.]" *Cooperwood,* 282 Kan. at 578, 147

14

P.3d 125.

*State v. Wells*, 289 Kan. 1219, 1236 (2009). Thus "[i]t is fundamental that in order for expert testimony to be admitted into evidence at trial it must be helpful to the jury." *State v. Reser*, 244 Kan. 306, 309 (1989). *See Sterba v. Jay,* 249 Kan. 270, 282 (1991) ("Expert opinion testimony is admissible if it will be of special help to the jury on technical subjects as to which the jury is not familiar or if such testimony would assist the jury in arriving at a reasonable factual conclusion from the evidence."); *Puckett v. Mt. Carmel Regional Medical Center*, 290 Kan. 406, 444 (2010) (admission of expert testimony "depends on finding that the testimony will be helpful to the jury"); *In re Care and Treatment of Stanley,* 2009 WL 3082539, 3 (Kan.App. 2009) ("expert opinion testimony generally is admissible if it aids the trier of fact with unfamiliar subjects or interpreting technical facts, or if it assists the trier of fact in arriving at a reasonable factual conclusion from the evidence."). It is within the discretion of the district court to determine whether the proposed testimony would or would not assist the jury. *See Cooperwood*, 282 Kan. at 578.

Kansas courts have repeatedly permitted experts to testify concerning the very matters that the child therapist testified to in Petitioner's case, based on tacit, if not express, findings that the average juror is unfamiliar with how children respond in sexual abuse situations. *See e.g., State v. McIntosh*, 274 Kan. 939, 958–60,(2002); *Reser*, 244 Kan. at 315; *State v.*

*Ulate*, 42 Kan.App.2d 971 (Kan.App. 2009); *State v. Roux*, 87 P.3d 993

(Table) (Kan.App. 2004); *State v. Lawrence*, 2004 WL 2659125, 9 (Kan.App.

2004); *Cf, State v. Gaona*, 41 Kan.App.2d 1064 (2009).

> In child sexual abuse cases, the trial court has the discretion to allow an expert to testify concerning the common behaviors displayed by children who are sexually abused. *State v. McIntosh*, 274 Kan. 939, 955-60, 58 P.3d 716 (2002). Additionally, an expert is permitted to testify regarding whether the child in the case fits the pattern of one who is sexually abused. 274 Kan. at 959. As the Supreme Court evidently found in *McIntosh*, the average juror would be unfamiliar with how children respond in sexual abuse situations. *See McIntosh*, 274 Kan. at 955-60.

*State v. Lawrence*, 2004 WL 2659125, 9 (Kan.App. 2004).

The Kansas Supreme Court on Petitioner's direct review found no

violation of the state evidentiary rules, because the trial court's finding that

the testimony would be helpful to the jury was within its discretion. *See*

*Reyna*, 290 Kan. at 682-86. The Court finds that the testimony of the

challenged expert did not render Petitioner's trial fundamentally unfair such

that he was deprived of his due process rights, and that the Kansas

Supreme Court did not act contrary to or unreasonably apply federal law in

concluding that the admission of this testimony was proper.

In his traverse, Petitioner alleges a "variance," claiming that the

expert's testimony went beyond what the prosecutor alleged she would

testify to, and beyond the limits to her testimony imposed by the judge, thus

doing indirectly what she could not do directly. *See* Doc. 19, p. 4-6. These

are new claims, so are not properly before the court. *See, e.g., Vanderlinden*

*v. Koerner*, 2006 WL 1713929 (D.Kan. 2006), *citing Loggins v. Hannigan*, 45 Fed. Appx 846, 849, 2002 WL 1980469 (10th Cir. 2002) ("We will not consider petitioner's argument … as this issue was first raised in petitioner's traverse to respondents' answer to habeas petition.") A traverse is not the proper pleading to raise additional grounds for relief. However, even if these claims were not procedurally barred, they would be denied on the merits. It would have been proper for the expert to have testified that she had examined the victims and that they had symptoms consistent with sexual abuse. *Reyna*, 290 Kan. at 684-85. Instead, her testimony was limited to generalizations concerning typical behaviors of sexual abuse victims, and she was subject to cross-examination. No denial of fundamental fairness occurred by the admission of her testimony.

### Limitation of voir dire

Petitioner next contends that his sixth and fourteenth amendment rights to a fair trial were violated by the trial court's limitation of his counsel's voir dire of potential jurors. *See* K.S.A. 60-247(b) ("The court must permit the parties or their attorneys to conduct an examination of prospective jurors."). Petitioner recognizes that K.S.A. 22-3408(3) permits the court to "limit the examination by the defendant, his attorney or the prosecuting attorney if the court believes such examination to be harassment, is causing unnecessary delay or serves no useful purpose."

The facts relating to this issue, as found by the Kansas Supreme

17

Court, follow:

The State questioned the jury panel at length before passing the panel for cause. Counsel for Reyna began her voir dire by saying, "[T]he good news is the State has asked a lot of questions that I would have so chances are my portion of the voir dire, which this process is called, won't take quite so long." Reyna's counsel then immediately began asking questions of individual jurors. She had questioned three jurors individually when the court called counsel to the bench and the off-the-record discussion was held. Following the discussion, counsel resumed questioning jurors individually. In all, after the discussion at the bench, counsel questioned another 20 jurors individually. She asked only five questions generally of the panel, and one of those resulted in individual discussions with three additional jurors before she passed the panel for cause.

Peremptory strikes were conducted in chambers. Following that process, Reyna's counsel stated:

"Judge, I would just ask that when the Court calls counsel up to the bench, that the Court tries not to scowl or make any kind of—and I'm stating this is because what happened [sic] I got called up to the bench in voir dire and I will tell the Court that I cut my voir dire back because I felt like if I was admonished again it was going to have a negative impact on Mr. Reyna, resulting in not being able to ask many questions of jurors that said nothing."

The trial judge responded, "Well, that's noted for the record. It's without any basis."

Counsel for Reyna filed a motion for new trial in which she alleged that the State's voir dire consumed close to 1 and 1/2 hours but the defense was not given an opportunity to sufficiently voir dire the panel. She alleged that in the discussion at the bench, the trial court "told defense counsel that she would not be permitted to do an individual voir dire, that the questions that were being asked were not germane and to move on as there wasn't time for this." At argument on the motion, counsel again stated that the court had admonished her that her voir dire questions were not germane, that it had limited her opportunity to question the potential jurors and, in particular, she had been limited from delving into their education and the degrees some of them were seeking, which in turn hampered her ability to select a jury that did not have preconceived notions.

In ruling on the motion, the district judge characterized the off-the-record conversation this way:

"The selection of the jury. In all due respect I think I made one

18

> comment to counsel out of hearing of the jury that I questioned whether it was germane to ask each of the very young witnesses or potential jurors who said they were in school or going to school what their major in college was or was going to be. Anybody that's been a parent and had children go through college knows that statistics that the major change [ sic ] an average of four to five times from when they start out and what they end up. That was the only comment I recall making and I believe that defense counsel had certainly adequate opportunity to—to question and voir dire. And once again, all due respect, Ms. McKenna, you've never been timid or reluctant to challenge my ruling in various trials by—by pushing those limits and asking your questions subject to further admonition. So I believe that the jury was fairly questioned by both sides and was fairly selected in this case."

The motion for new trial was denied.

*Reyna*, 290 Kan. at 686-88.

Petitioner  attempts to rebut some of the facts by stating: "…petitioner's counsel was unconstitutional[ly] limited in her voir dire for the sole reason that the trial judge 'needed to move on because did not ha[ve] the time for it.' See record at R.I. 69, VIII, pages. 56-63." Doc. 19, p. 6. The record reflects that the language quoted above about needing to move on is not the statement of the judge, but merely the characterization of Petitioner's counsel during post-trial motions, as detailed below.

The sole record of any interruption by the court during the voir dire by Petitioner's counsel is the following:

> Ms. McKenna: When will … Ms Holthaus, when will your fall semester begin?
> Ms. Holthaus: August 16th.
> Ms. McKenna: Mr. House, --
> The Court: Would counsel approach please?
> (Counsel approached the bench and an off-the-record discussion

was held.)

R.Vol. I, p. 63. Thereafter, Ms. McKenna's voir dire continued. The record does not reflect that the judge ever asked Petitioner's counsel to move on because he didn't have time for it, or for any other reason. Instead, the voir dire by his counsel proceeded for some time, comprising nearly 30 additional pages of transcript after the court's interruption of voir dire.

Petitioner's counsel, in her motion for new trial, stated that during the unrecorded bench conference, the judge said he didn't have time for questions he found were not germane to the proceedings :

> the court told defense counsel that she would not be permitted to do an individual voir dire, that the questions that were being asked were not germane and to move on as there wasn't time for this.

Ap. Ct. Vol. I, p. 69. The prosecutor's understanding of the bench conference was that defense counsel was not permitted to conduct individual voir dire:

> The State did not conduct any type of individual voir dire of any of the potential jurors and I think the Court's position was that the defense wasn't going to conduct any individual voir dire.

Transcript, Ap. Ct. Vol. II, Sept. 17, 2007 transcript (re: post-trial motions). Accordingly, no record supports Petitioner's factual challenge to the record, The Court therefore accepts the Kansas Supreme Court's statement of facts, and turns its attention to the governing law.

The purpose of voir dire examination is to enable the parties to select jurors who are competent and without bias, prejudice, or partiality. *State v. Hayden*, 281 Kan. 112 (2006); *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991).

20

The scope of juror examination during voir dire is within the discretion of the trial court. *State v. Madkins*, 42 Kan.App.2d 955 (2009). "[T]he trial court [however] retains great latitude in deciding what questions should be asked on voir dire." *Mu'Min*, 500 U.S. at 424.

On habeas review, "[t]his court's review of the state trial court's voir dire is 'limited to enforcing the commands of the United States Constitution.' " *Neely v. Newton*, 149 F.3d 1074, 1083-84 (10th Cir. 1998) (quoting *Mu'Min v. Virginia*, 500 U.S. 415, 422) (pre-AEDPA), *cert. denied*, 525 U.S. 1107 (1999) .The crucial question before this court is whether the trial court's restriction during voir dire rendered the proceeding "fundamentally unfair." *Sallahdin v. Gibson*, 275 F.3d 1211, 1222 (10th Cir. 2002).

> A defendant's right to an impartial jury includes the right to an adequate voir dire to identify unqualified jurors .... The trial court, however, retains great latitude in conducting voir dire ... and the Constitution does not require an additional opportunity to make a searching inquiry.

*Sallahdin*, 275 F.3d at 1222-23(citations omitted).

On habeas review, this Court gives deference to the trial court's superior perspective to assess which inquiries will be fruitful in uncovering bias and which will not be.

> The Constitution "does not dictate a catechism for voir dire, but only that the defendant be afforded an impartial jury." *Morgan v. Illinois*, 504 U.S. 719, 729, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). Neither due process nor the Sixth Amendment entitles a defendant to ask prospective jurors every question that might prove helpful. *Mu'Min v. Virginia*, 500 U.S. 415, 425-26, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). What matters is whether the defendant's inability to ask a

question renders the proceeding "fundamentally unfair" by making it impossible to identify an unqualified juror. *Id.* at 426, 111 S.Ct. 1899. And in answering that question, we again remain mindful that the trial court's vantage point gives it a superior perspective to assess which inquiries will be fruitful in uncovering bias and which will not be. *See Morgan*, 504 U.S. at 729, 112 S.Ct. 2222.

*Bedford v. Collins*, 567 F.3d 225, 232 (6th Cir. 2009), *cert. denied*, __ U.S. __, 130 S.Ct. 2344 (2010). *See Jackson v. Mullin*, 46 Fed.Appx. 605 (10th Cir. 2002) (reciting same standard).

The Kansas Supreme Court properly stated its task as independently evaluating the circumstances to determine whether the trial court assured that the accused was tried by an impartial jury. *Reyna*, 290 Kan. at 686. It concluded:

> Putting together the various segments of the trial at which the voir dire was conducted and discussed, we cannot conclude that Reyna's counsel was limited in her questioning of the jury panel in any meaningful way. Following the discussion at the bench, counsel proceeded to question 20 panel members on an individual basis. Her questioning resulted in the removal of one juror for cause. While she did leave the topic of college majors following the discussion at the bench, the trial court's assessment of that topic hardly seems an abuse of discretion. We pause to note that it was Reyna's burden to produce an adequate record on this issue and a request to put the conversation at the bench on the record would have assisted in our review. *See State v. Seward*, 289 Kan. 715, 720–21, 217 P.3d 443 (2009). That said, we also note that it is not a common practice for a trial judge to *sua sponte* interrupt voir dire, and our review of the record indicates no reason it should have been interrupted here. However, our independent evaluation of the circumstances does not indicate prejudice to Reyna.

*Reyna*, 290 Kan. at 688.

The Kansas Supreme Court thus decided that the limitation of voir dire was within the trial court's discretion and was not prejudicial to the

22

defendant. It found that any curtailment of defendant's ability to ask about college majors or potential majors during voir dire did not render the proceeding "fundamentally unfair," and that defendant had not met its burden to show that any other limitation had been placed on voir dire. This was a reasonable determination of the facts. Although defense counsel's voir dire was curtailed in part, she nonetheless had sufficient opportunity to ascertain bias or prejudice on the part of the prospective jurors, and to intelligently exercise her peremptory challenges. The record does not reflect that she was denied any leeway in questioning the jurors that was granted to the prosecution. The Kansas Supreme Court did not act contrary to or unreasonably apply federal law in concluding that the trial court's restriction during voir dire did not render Petitioner's trial fundamentally unfair.

**Sufficiency of evidence**

Petitioner lastly contends that insufficient evidence was presented at trial to support his convictions. His argument focuses on alleged inconsistencies between the victims' pretrial statements and their trial testimony.

The standard to be applied by this Court to a sufficiency of the evidence claim is deferential toward the prosecution.

> To determine whether the judgment of a state court on a sufficiency of the evidence claim violates clearly established federal law we apply the standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Parker*, 394 F.3d 1032, 1314. A fact finder's verdict does not violate a defendant's due process rights if

> "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.

*Pouncil,* 123 Fed.Appx. at 353. *See Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir.), *cert. denied*, 540 U.S. 1035 (2003); *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993).

In performing this task, a habeas court does not weigh conflicting evidence or consider witness credibility. *Wingfield v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997), *cert. denied*, 523 U.S. 1005 (1998); *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996). This standard of review respects the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the testimony presented at trial. *Jackson*, 443 U.S. at 319. Under AEDPA, the Court must decide whether the Kansas Supreme Court's decision that there was sufficient evidence to support a jury's finding of guilt was contrary to or an unreasonable application of *Jackson*. See 28 U.S.C. § 2254(d)(1); *Spears v. Mullin*, 343 F.3d 1215, 1238-39 (10th Cir. 2003), *cert. denied*, 541 U.S. 909 (2004).

Petitioner states in his traverse, that instead of challenging the credibility of the childrens' statements, he is challenging the reliability of their statements, since they had seen a counselor or therapist several  times after the events, and that person may have influenced their testimony. To the

extent this is a new claim, it is not properly before the court, as explained before. But even if it were not a new claim, it is procedurally barred because due to Reyna's objection, no evidence that the victims had seen a counselor or therapist was presented at trial.[3] Accordingly, the Court focuses on the evidence that was presented at trial.

The Kansas Supreme Court examined the evidence presented at trial in light of the Petitioner's claims and found some inconsistencies. *Reyna*, 290 Kan. at 671-74, But it held "in key details, the testimony of the victims corroborated each other's." 290 Kan. at 674. The court concluded that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational juror to find the Petitioner guilty beyond a reasonable doubt. *Id.*

Having reviewed the evidence, this court agrees with Petitioner that the pretrial statements of the two children are not entirely consistent with their trial testimony. But the court also agrees with the district court that the evidence as a whole was sufficient for a reasonable jury to have found the

---

[3]The expert was precluded from testifying that she had counseled the children after the alleged assaults, because Reyna objected that any such evidence was tantamount to introducing her opinion that they had in fact been sexually abused. *Reyna*, 290 Kan. at 682-83. The trial court agreed, so precluded such testimony. Reyna's claim of unreliability depends on admission of testimony that the expert had counseled them, which testimony Reyna kept out of trial, and is thus precluded by the invited error doctrine, a firmly established and regularly followed state procedural rule. *See State v. Bello*, 289 Kan. 191, 193 (2009) (a party may not invite error and then complain of the error on appeal); *State v. Plunkett*, 261 Kan. 1024, 1033 (1997).

Petitioner guilty beyond a reasonable doubt of four counts of aggravated indecent liberties. Conflicting evidence is a matter for the jury to resolve, not for this court to weigh when reviewing a habeas petition. Instead, on habeas review, the court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The Kansas Supreme Court correctly applied the standard of *Jackson*, thus its rejection of Petitioner's sufficiency of the evidence challenge did not involve an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d)(1); *Wymer v. Workman*, 311 Fed.Appx. 106 (10th Cir. 2009). The Court additionally finds that the Kansas Supreme Court's determination of the facts was not unreasonable. *See* 28 U.S.C. § 2254(d)(2).[4]

**Evidentiary hearing**

The court finds that an evidentiary hearing is not required in this case. "[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record." *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005); *see Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record

---

[4]The Tenth Circuit is split as to "whether, under AEDPA, we review a sufficiency-of-the-evidence issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2) and (e)(1)." *Romano v. Gibson*, 239 F.3d 1156, 1164 n.2 (10th Cir.), *cert. denied*, 534 U.S. 1045 (2001); *see Dockins v. Hines*, 374 F.3d 935, 939 (10th Cir. 2004); *Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir. 2003). Under either standard, Petitioner's claim fails.

refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). The court finds that the record in this case refutes Petitioner's allegations and otherwise precludes habeas relief.

**Certificate of appealability**

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See United States v. Bedford*, 628 F.3d 1232 (10th Cir. 2010). "When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in it procedural ruling." *Slack*, 529 U.S. at 484. Neither of these standards is met here. For the reasons stated above, defendant has not made a substantial showing of the

27

denial of a constitutional right. The court therefore denies a certificate of appealability.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 (Dk. 1) is denied.

IT IS FURTHER ORDERED that this action is dismissed and all relief is denied.

Dated this 11th day of October, 2011.


s/ Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge